## MERRELL RYDER vs. OTTO NEITGE.

### October 6, 1874.

**Error, Not Working Prejudice, Disregarded.**—Instances in which alleged errors in instructing and refusing instructions to a jury are disregarded, on the ground that, if errors, they are not shown to have prejudiced the appellant.

**Sale of Provisions—Warranty of Quality.**—A warranty that provisions are wholesome and fit for consumption, if implied at all, is implied only where they are sold for consumption, or immediate domestic use by the vendee, and not. where they are sold as merchandise.

Complaint, that on December 21, 1871, at St. Paul, the plaintiff was carrying on the business of purchasing venison

for the Eastern markets; that defendant, with knowledge of plaintiff's business, then and there brought to him seventy-eight saddles of venison, of the weight of 4,850 pounds, and represented that the same were properly dressed and prepared for shipment to said markets; that he had fattened the deer from which the same were cut, and that for these reasons the same were of extra quality; that such saddles were then covered with skins, and frozen solid, by reason whereof the plaintiff could not ascertain, and did not verify, the truth of such representations; that plaintiff then believed such representations to be true, and on faith thereof purchased and paid the defendant more than the then market price for such venison, and the sum of $630.50. That afterwards the plaintiff ascertained, and the fact was, that said saddles were not properly dressed or prepared for shipment to said markets, that defendant had not fattened any of said deer; and that all said representations were utterly false. That for the purpose of cheating plaintiff, the defendant had, when he dressed said saddles, improperly packed fat into the same, and then placed water therein; and when brought to plaintiff, each of such saddles actually had, frozen up within it, a large quantity of fat and ice, of no value, and calculated to rot and spoil such saddles, and such fat was actually spoiled, and spoiling such saddles; that such fat and ice greatly increased the weight of such saddles, and damaged the meat thereof, and by reason of such facts, said seventy-eight saddles were not, when sold to plaintiff, worth over the sum of $430.50, whereby the plaintiff was damaged in the sum of $200.

For a second cause of action, that on January 3, 1873, at St. Paul, the defendant sold and delivered to plaintiff nineteen saddles of other venison, of the weight of 1413 pounds; that the same were also frozen solid, and had the skins on, and were so packed that plaintiff could not then or there ascertain the condition thereof. That defendant then represented that such saddles came from deer that he had killed, and that the same were properly dressed for shipment to the

Eastern markets, and were in good condition. That relying · on such representations, plaintiff agreed to pay defendant therefor the sum of $141.30. That in point of fact, said last saddles were also improperly dressed, packed full of gut fat and ice, and partially spoiled thereby. That defendant so packed such saddles to falsely increase the weight thereof, and to mislead and cheat the plaintiff; that by reason thereof, said saddles were not then and there worth more than the sum of $83.05, and by reason of such facts, the plaintiff has suffered damage in the sum of $58.25.

The plaintiff admits a counter-claim in favor of defendant for $141.30, the agreed price of the last lot of saddles, and for $15.75, balance of account due defendant from plaintiff, in all the sum of $157.05, and demands judgment for $101.21, with interest, etc. ·

The answer admits the sale of both lots of saddles, frozen and with the skins on, and alleges that the first lot were properly dressed, in suitable condition for shipment, and were cut from deer that defendant had fed; that such saddles were good and fat, and that they were purchased by plaintiff, after inspection by himself and his agent, for the said sum of $630.50, which was then and there less than the market value thereof. As to the second lot of saddles, the answer contains similar admissions and averments, and further alleges that plaintiff agreed to pay therefor eleven cents per pound, which was less than they were worth, amounting in the whole, the agreed price, to $153.43. That plaintiff has never paid any part of said amount, which is alleged as a counter-claim, and judgment demanded therefor, and for the sum of $15.75, admitted in the complaint to be due defendant, and also alleged as a counter-claim.

At the trial in the court of common pleas for Ramsey county, before *Hall*, J., the plaintiff testified as follows: The first lot of saddles were purchased of defendant in Wisconsin by my agent, twenty-five dollars being paid down, and the saddles to be delivered by defendant, in good condition, before the holidays. When defendant brought in the

venison, he claimed a higher than the agreed price, and wanted thirteen cents—it was so very nice. I looked at the lot on defendant's teams, and agreed to take them. On weighing, they were found to be too heavy; but defendant said they were so heavy, because they were so fat, and that deer fed on grain would weigh more. The saddles were not opened at all. They can't be opened, when tied and frozen. They were shipped East as brought in. Gut fat is never packed into the saddles. It is not customary to freeze ice in them. When warm, the gut fat spoils it. Fat spoils quicker than meat. We were paying at that time eleven and a-half to twelve cents for venison. In judging of the condition of the meat, we relied on defendant's word.

As to the second purchase, the plaintiff testified: Defendant came in, and told me he had nineteen saddles at the depot, which he wanted to sell. I told him I would give him the market price. Brought up and weighed them, and agreed to give him ten cents per pound, if they were merchantable. He said they were the same as the lot of the year before,—all in good condition. We undertook to open them and examine, but could not, and cut the skins. I opened five saddles of the last lot, found them full of fat and ice, and in a putrid condition, full of blood.

The plaintiff also introduced evidence corroborating his own testimony, and also evidence tending to prove the bad condition of both lots of venison on their arrival in New York, and the amount of his damages.

The plaintiff requested the court to instruct the jury that " If they find that there was a warranty of the condition of the venison, or that there was deceit on the part of the defendant in making such sales, then they must allow the plaintiff the sum he claims as damages on each lot." This instruction the court refused to give, but charged the jury, among other things, as follows : " In order that the plaintiff can recover, you must be satisfied, not only that the venison, or a portion of it, was spoiled, but that defendant knew its condition, and, intending to deceive, made false representa-

tions concerning it, by which plaintiff was deceived and damaged. There is no question of warranty arising in the case. The action is founded upon deceit; and unless that is shown, the plaintiff must fail." The plaintiff duly excepted to the refusal of the instruction requested, and to the charge as given.

The jury found a verdict for defendant for $131.04, a motion for a new trial was denied, and the plaintiff appealed.

*W. P. Warner*, for appellant. Under the pleadings, the plaintiff could recover, either by showing that there was a false warranty, or deceit; and there was some evidence of a false warranty in the sales. *Marsh* v. *Webber*, 13 Minn. 109 ; *Faribault* v. *Sater*, 13 Minn. 223.

*Henry J. Horn*, for respondent.

BERRY, J. The plaintiff contends that the court below erred in instructing the jury that there was no question of warranty in this case, and that the action was founded on deceit, which must be shown to entitle him to recover; and also, in refusing to instruct that he was entitled to recover, upon proof of either warranty or deceit. As it is clear that the complaint states a cause of action for deceit, it is not important, in the view which we take, to enquire whether it also declares for a breach of warranty. If there was no evidence in the case tending to make out a warranty, as claimed to be alleged in the complaint, and a breach thereof, the errors complained of were errors in the abstract, if at all, and as they could not work any practical injury, they are to be disregarded. It is true that the return does not contain all the testimony received below; but as the burden is upon the appellant to show prejudice, it is for him to bring up so much of the testimony as he deems necessary to show that the instructions and refusals complained of, were prejudicial.

We have, therefore, to enquire whether it appears, from the testimony returned, that there was any evidence in the case tending to establish the warranty claimed to be set up in the complaint, and a breach of the same. As to the sad-

dles of venison first purchased, the representations claimed to amount to a warranty, were, that the same were properly dressed and prepared for shipment to the Eastern markets; that the defendant had fattened the deer from which the same were cut; and that, for these reasons, the same were of extra quality. As to each of these representations, an examination of the testimony returned will show one or both of two things: viz., that the alleged representation is not proved to have been made, or that it is not proved to have been false. So far, then, as the first purchase of venison was concerned, defendant fails to show prejudice from the instructions and refusals which he deems erroneous.

As to the second purchase of venison, even if it be admitted that the representations alleged to have been made by defendant would have amounted to a warranty, under any state of facts, the testimony of the plaintiff himself shows that the purchase was not made upon the basis of a warranty; in other words, that defendant's proposal to warrant was not accepted, but, on the contrary, was expressly declined, the plaintiff undertaking to pay the agreed price, "if they (the saddles) were merchantable," and opening and inspecting the same for himself, as far as he desired, or as was necessary, and rejecting such as he deemed unmerchantable, and, in addition, having as yet paid nothing on account of said second purchase. As to this cause of action, also, the plaintiff therefore fails to show that he was prejudiced by the instructions and refusals of which he complains.

It is urged by the plaintiff that these were sales of provisions, as to which the law implies a warranty that they are wholesome and fit for consumption. But the warranty referred to, if implied at all, (see Benjamin on Sales, 550,) is implied only where the provisions are sold for consumption, or immediate domestic use by the vendee, and not as merchandise, as in this case. 1 Parsons Cont. 588, note *c; Moses* v. *Mead*, 1 Denio, 378.

The complaint admitted a counter-claim in favor of defendant, to the amount of $157.05, while the jury brought

in a verdict in his favor for $131.04 only. As the evidence is only partially reported, we are not in possession of the *data* upon which the jury reached their conclusion. For aught that appears, the reduction of the counter-claim may have resulted from a finding that the seven saddles of venison, (part of the last purchase,) which plaintiff had testified to be in bad order, were worth less (by half) than ten cents a pound, (the price which the plaintiff testifies that he agreed to pay, if they were merchantable,) and the jury may have made a reduction accordingly. Certainly, the state of the pleadings is not such as to warrant the plaintiff's counsel in contending that, because the jury allowed part of the amount claimed by plaintiff, they should have allowed the whole of the same.

Order denying new trial affirmed.