HANNAH D. SEYMOUR *vs.* CHICAGO GUARANTY FUND LIFE SOCIETY.

Argued July 6, 1893. Affirmed July 13, 1893.

**Policy of Insurance Construed—Ultra Vires.**

> A policy of insurance issued by defendant in lieu of the policy of another insurance company, pursuant to a contract between the two companies, construed in connection with that contract.

Appeal by defendant, the Chicago Guaranty Fund Life Society, from an order of the District Court of Washington County, *W. C. Williston*, J., made March 1, 1893, denying its motion for a new trial.

The Northwestern Guaranty Life Insurance Company of St. Paul on July 27, 1888, issued its certificate to George M. Seymour of Stillwater, by which it agreed to pay his wife, the plaintiff Hannah D. Seymour, on his death $5,000, subject to certain rebate for a reserve fund. On November 10, 1891, the defendant agreed with the St. Paul Company to assume its business, and in pursuance thereof George M. Seymour on December 19, 1891, surrendered his certificate in the St. Paul Company and in its stead took one in the Chicago Society. The material provisions in the contract between the two insurance companies and in the certificates to plaintiff's

husband are stated in the opinion. He was born March 26, 1829, he died April 11, 1892. Notice was given, and proofs of death furnished. This action was to recover the insurance. A jury was waived. The court made findings January 5, 1893, and ordered judgment for plaintiff for $4,500 with interest from August 4, 1892, and costs. Defendant moved for a new trial; being denied, it appeals.

*Eller & How,* for appellant.

The Illinois Statute, under which defendant was created, required that its articles of incorporation should state the limit as to age of the persons who might become members, and in compliance with this provision its articles stated, that no person under eighteen or over sixty years of age should become a member of the corporation. Seymour was over sixty years old when he took out the present certificate of insurance. He knew he was not entitled to be insured, and that he was asking for something that the officers of the defendant had no right or authority to grant. To now permit plaintiff to have all the benefits of a legitimate membership when none in fact existed, and could not be lawfully created, would operate as a fraud upon the other members of the society. *Rochester Ins. Co. v. Martin,* 13 Minn. 59, (Gil. 54;) *McCoy* v. *Roman Catholic Mut. Ins. Co.,* 152 Mass. 272; 2 Morawetz, Corp. 690.

All that the agreement between the insurance companies amounted to was, that the Chicago Society would admit the members of the St. Paul Company on the basis of their original application to it and the medical examination then had, provided the individual so desired. There was no provision that when admitted the membership in the defendant should date back to the time of the actual admission of the party in the St. Paul Company. This agreement was not embodied in the contract actually entered into with Seymour as evidenced by the certificate and cannot be resorted to for the purpose of changing or modifying any provision therein contained. *McFarland* v. *St. Paul F. & M. Ins. Co.,* 46 Minn. 519; *Pindar* v. *Resolute Fire Ins. Co.,* 47 N. Y. 114; *Ruse* v. *Mutual Benefit Life Ins. Co.,* 23 N. Y. 516; *Knickerbocker Life Ins. Co.* v. *Heidel,* 8 Lea, 488; *Moore* v. *State Ins. Co.,* 72 Iowa, 414; *Stone's Adm'rs* v. *United States Casualty Co.,* 34 N. J. Law, 371; *American Popular*

*Life Ins. Co.* v. *Day,* 39 N. J. Law, 89; *Planters' Mut. Ins. Co.* v. *Rowland,* 66 Md. 236.

*Otis & Godfrey,* for respondent.

Contracts fully executed by one of the parties, and which contravene no public policy, will rarely be held void at the instance of the other to shield it from a just liability. *Bissell* v. *Michigan Southern & N. Ind. R. Co.,* 22 N. Y. 270; *Converse* v. *Norwich & N. Y. Transp. Co.,* 33 Conn. 166; *National Bank* v. *Matthews,* 98 U. S. 621; *Kneeland* v. *Gilman,* 24 Wis. 39; *Parish* v. *Wheeler,* 22 N. Y. 494; *Hall* v. *Union Mut. Fire Ins. Co.,* 32 N. H. 297; *Darst* v. *Gale,* 83 Ill. 136; *Pneumatic Gas Co.* v. *Berry,* 113 U. S. 322; *Bloomington Mut. Ben. Ass'n* v. *Blue,* 120 Ill. 121.

GILFILLAN, C. J.   As the defendant's articles of incorporation provide that certificates (of insurance) will be issued only to persons who are above the age of eighteen years and not above the age of sixty years, and that no person shall become a member of the corporation who is under eighteen or over sixty years of age, the contract of insurance with George M. Seymour, who, when the certificate was issued to him, was over sixty years of age, and the agreement of the defendant with the Northwestern Guaranty Life Insurance Company by which the former agreed to substitute its certificates of insurance for those surrendered to it by the holder of like certificates of the latter, so far as it assumed to bind defendant to make the substitution as to persons who at the time of the substitution should be over the age of sixty, and all certificates substituted in such cases, were outside of the purposes for which defendant was incorporated. They were *ultra vires.* But there are few rules better settled or more strongly supported by authorities, with fewer exceptions, in this country, than that when a contract by a private corporation, which is otherwise unobjectionable, has been performed on one side, the party which has received and retained the benefits of such performance shall not be permitted to evade performance on the ground that the contract was in excess of the purpose for which the corporation was created. The rule may not be strictly logical, but it prevents a great deal of injustice. The decisions are found referred to in the following text-

books: Mor. Priv. Corp. (1st Ed.) § 100; Beach, Priv. Corp. §§ 422–425; Field, Priv. Corp. §§ 263–266; Spelling, Priv. Corp. § 766. Seymour had fully performed the contract on his part, and the defendant received and appropriated the benefits thereof, and it must accordingly perform on its part. And this brings the case to the question of how much plaintiff is entitled to recover. The amount of the insurance was on the face of the certificate $5,000. But the articles of incorporation provided for the creation of a reserve fund, by deducting from the face of any policy twenty-five per cent. if the member should die within the first year from its date, twenty per cent. if within the second year, fifteen per cent. if within the third, ten per cent. if within the fourth, and five per cent. if within the fifth. The policy to Seymour contained this provision: "If this policy be terminated by death on or before the first anniversary of the date hereof," and then stating the percentage to be deducted in case of death within the several years, respectively, according to the articles of incorporation. The policy was dated December 19, 1891, and Seymour died April 11, 1892, so that by the terms of the policy, standing alone, there was to be deducted for the reserve fund twenty-five per cent. of its face, to wit, $1,250. The policy, however, contained this clause: "This certificate is issued and accepted in lieu of the certificate issued to the assured within named by the Northwestern Guaranty Life Insurance Company of St. Paul, Minn., and in consideration thereof the certificate issued by said Northwestern Guaranty Life Insurance Company is hereby surrendered, and the application, statements, and representations made therein by the within named assured to said Northwestern Guaranty Life Insurance Company for such insurance shall apply to and become a part of this policy, and are warranted by the assured within named to be true." This recital makes it proper, in construing the policy, to inquire into its origin, and the nature of the transaction in which it was issued. It appears that the substitution of policies was pursuant to a contract between this defendant, party of the first part, and the Northwestern Company, party of the second part, which provided for the defendant taking up and continuing the insurance by the Northwestern Company, which was agreed to be effected by each holder of a policy in the Northwestern surrendering it to defendant, and

the defendant issuing in lieu thereof its policy for the same amount, based on the original application to the Northwestern, and the contract contained this covenant on the part of defendant: "And further agree that the holder of such substituted policy, who shall comply with the terms and conditions thereof, shall be entitled to all the contracts, rights, privileges, and protections that such holder would have had had he taken out a policy from the first party in the first instance." This we construe to mean, in brief, that, so far as might affect any rights under it, the substituted policy should be deemed to have been issued at the date of the surrendered policy of the Northwestern; that is, each policy taken in substitution should stand and be construed as though issued and dated at the date of the surrendered policy. The policy to Seymour was issued to carry out, so far as he was concerned, that agreement, and to determine the effect of the policy and the rights of the assured under it it may be read in connection with the contract pursuant to which it was issued. It is to be presumed that the parties intended the policy to be construed (if possible) consistently with the contract; and as this was not and does not purport to be an original insurance, but rather the continuation of insurance effected by a previous policy, there is no difficulty in construing the words, "and if this policy shall be terminated by death before the first anniversary of the date hereof," to refer, not to the date of the substitution, but of the policy of which this is a continuation. So construing it preserves to the holder the rights assured to him by the contract between the two companies, to preserve which this policy was substituted for the other. To construe it alone and by the letter, these rights would be defeated. Seymour's policy in the Northwestern was issued and dated July 27, 1888, so that by the terms of the contract between the two companies and of this policy, if it is to be deemed as issued of the date of the original policy, there could be deducted but ten per cent. of the face of the policy.

Order affirmed.

(Opinion published 55 N. W. Rep. 907.)