CLARENCE M. TAYLOR and Others v. SECURITY MUTUAL FIRE INSURANCE COMPANY.[1]

January 9, 1903.

Nos. 13,283—(182).

## Fire Insurance—Increase of Risk.

Action to recover on an insurance policy for loss by fire. Defense, that the risk was materially increased by the erection of adjoining buildings with the consent of the insured. *Held*, when the insurer sets up a forfeiture of the policy, growing out of an alleged increase of the risk, the burden is upon the insurer to prove it.

[1] Reported in 92 N. W. 952.

**Question for the Jury.**

Whether the risk in any given case has been increased by the repair or alteration of the building insured, or the erection of other structures adjacent thereto, is always a question of fact for the jury, unless the facts be undisputed, and the inference therefrom be so certain and obvious that it must be self-evident to an ordinary man that the risk was increased by the acts complained of.

**Custom.**

Evidence of the custom of insurance companies to charge a higher rate of premium under conditions similar to those shown in this case is competent on the question of increase of risk, but it is not conclusive upon the jury, even if undisputed.

**Verdict Sustained by Evidence.**

The evidence sustains the verdict in this case for the insured.

Action in the district court for St. Louis county to recover $1,500, and interest, upon a fire insurance policy. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Brown & Kerr*, for appellant.

*Mitchell & Reynolds*, for respondents.

START, C. J.

This is an action upon a fire insurance policy, of the standard form, issued by the defendant to the plaintiffs upon their stock of merchandise in a store building in the village of Cass Lake. The policy was to be effective for one year from November 7, 1899. On March 17, 1900, the defendant granted permission for the removal of the insured property to another location in the same village, where it was destroyed by fire on June 28, 1900. The defense to the action is that the risk was materially increased by the erection of adjoining buildings, after the permit was granted, to the one in which the insured property was kept, with the knowledge, consent, and control of the plaintiffs, but without the assent of the defendant. Verdict for the plaintiffs for $1,602.75, the agreed amount of the loss, and the defendant ap-

pealed from an order denying its motion for judgment or a new trial.

The assignments of error present two general questions. The first relates to the sufficiency of the evidence to support the verdict, and the second to the correctness of the instructions of the trial court to the jury.

1. The policy contained a provision to the effect that it should be void if, without the assent of the company, the situation or circumstances affecting the risk should, by or with the knowledge, advice, agency, or consent of the insured, be so altered as to cause an increase of such risk. When, as in this case, the insurer sets up a forfeiture of the policy, growing out of a violation of this provision against an increase of hazard, the burden is upon the insurer to prove such violation. Newman v. Springfield F. & M. Ins. Co., 17 Minn. 98 (123). What constitutes an increase of risk, within such provision, is a question of fact, for the jury to determine from the evidence. It is rare that the question is ever one of law, to be determined by the court. The opinion of experts, if admissible, is not conclusive upon the question. May, Ins. § 218; Wood, Ins. § 243; Kerr, Ins. 417; 13 Am. & Eng. Enc. (2d Ed.) 285; notes to Angier v. Western (10 S. D. 82) 66 Am. St. Rep. 697; 28 Cent. Dig. 2838; Morris v. Farmers Mut. Fire Ins. Co., 63 Minn. 420, 65 N. W. 655; Cornish v. Farm, 74 N. Y. 295; Joyce v. Maine, 45 Me. 168; Franklin v. Gruver, 100 Pa. St. 266; Shepherd v. Union, 38 N. H. 232.

There are, however, exceptional cases where courts have held, as a matter of law, that the risk was increased. The case of Betcher v. Capital Fire Ins. Co., 78 Minn. 240, 80 N. W. 971, is such a one. In that case the insured paid an extra premium for a permit to store fireworks for fifteen days in the building containing the insured property. The limit expired, and eleven days thereafter, by an explosion of the fireworks, the insured property was destroyed by fire. Here the insured, by the act of securing the limited permit, and paying the extra premium therefor, necessarily conceded that the storing of the fireworks increased the hazard; hence there was no disputed question of fact in the case, and the court rightly held, as a matter of law, that the risk was increased

by keeping the fireworks in the building after the permit expired, and that the policy was thereby rendered void. In referring to this increase of the risk, the court said: "Even if there was no direct evidence on the question, we would take judicial notice of the fact that the storage of such articles caused an increase of the risk." Indeed, we do not understand that this is disputed by the plaintiffs.

The case of Alston v. Greenwich, 100 Ga. 282, 27 S. E. 266, also relied upon by the defendant, is similar in principle to the Betcher case. In that case the insured permitted a large quantity of baled hay to be stored in the insured building without the consent of the insurer. The plaintiff testified that hay was the most inflammable article, except kerosene oil, kept therein. It further appeared from the evidence on his behalf that he had thereby increased the risk, and the court rightly ruled, as a question of law, that the risk had been voluntarily increased, and the policy was void. These exceptional cases are not here in point.

On the other hand, in the case of Cornish v. Farm, supra, it was claimed by the insurer that the risk had been increased because the insured building was left unoccupied,—an admitted fact; but the insured gave evidence showing the location and condition of the property, and the character of the neighborhood. Experts testified on behalf of the insurer that the hazard of unoccupied buildings and the rate of insurance therefor were greater than in the case of occupied ones. But it was held that the question of increased risk was properly submitted to the jury as a question of fact. Again, in the case of Franklin v. Gruver, supra, the question of an increase of the risk by the erection of additional buildings was involved. Evidence was received to show that such additional buildings increased the rate of insurance, but the testimony of experts that the risk was thereby increased was rejected. The question of increase of risk was submitted to the jury, with the instruction that the question was not one for the opinion of experts. There was a verdict for the insured, and on appeal the ruling of the court was sustained.

We therefore hold, upon principle and the great weight of authority, that the question whether the risk has been increased by

the repair or alteration of the building insured, or in which the insured property is located, or by the erection of other structures adjacent thereto, is always one of fact for the jury, unless the facts be undisputed, and the inference therefrom be so certain and obvious that it must be self-evident to an ordinary man that the risk was increased by the acts complained of.   Where the risk is in fact increased, it is immaterial that the loss was not caused by it.

The evidence in this case tended to establish these facts: The building in which the insured property was, at the time the policy thereon was issued, stood upon the right of way of a railroad company.   It was a store building twenty-two feet by sixty, with a warehouse attached in the rear.   Projecting back of that, about twelve feet, was a warehouse twenty by about thirty.   East of this was another warehouse and barn, about twenty by forty, and east of that was a large barn, covered with tar paper, which was used also as a warehouse.   The plaintiffs, in the partial execution of their plan to change the location of their buildings, on March 14, 1900, moved the main store building onto lot twelve in block ten in the same village.   On the same day they wrote to defendant, asking for a permit for the removal of their building to lots ten, eleven and twelve in block ten, stating that:

"Our old store building is on a corner now, and we own two inside lots, so no building except our own can come within fifty feet.   This risk is better than the old."

The defendants on March 17, 1900, in reply to the plaintiffs' request, sent the permit, stating that:

"As we understand it, you are going to move your old store building, with contents, to this new location; also that the building will stand by itself.   As your other risk is situated on block seven, and this on block ten, we presume they are separate. Please advise us if this is correct."

The plaintiffs did not reply to this, but attached the permit to the policy.   After this, and before the fire, they erected two warehouses and a barn upon the new location, substantially of the same size and kind as those on the old location, which were attached to

and located, with reference to the main building, substantially as were the old ones when the policy was issued. Evidence was given by both parties tending to show in detail the location of the plaintiffs' buildings and those of other parties, and the condition of things in the vicinity at the time the permit was given and afterwards. The defendant called two competent witnesses, who testified that, according to the custom of fire underwriters, the erection of the buildings on the plaintiffs' lots would materially increase the rate of premium. This evidence was undisputed. The fire which destroyed the property in question originated in a building on the fifth lot in the block, and spread through the block in each direction. The plaintiffs' store building caught the fire on the front end, and after this the warehouses caught fire.

The trial court submitted the question to the jury whether, after the removal in accordance with the permit, the situation and circumstances affecting the risk were so altered as to cause an increase of the risk, and excluded from their consideration the question whether when the property was destroyed by fire the risk was as good or a better one than when the property was at its old location; or, in other words, the question whether there had been an increase of risk was not to be determined by a comparison of the condition and location of the buildings when the policy was issued with their condition and location when the fire occurred, but by a comparison with their location and condition when the permit was given and when the fire occurred.

Whether this was correct or not, we need not determine, for neither party objected to the instruction, and the question of the sufficiency of the evidence to sustain the verdict must be determined upon the assumption that the instruction was correct. We have attentively considered the record, and have reached the conclusion that this case does not fall within the exception to the rule that the question of increased risk, in insurance cases, is one of fact for the jury. We accordingly hold that the verdict is sustained by the evidence, within the rule stated.

2. The trial judge, with reference to the evidence showing an increase of the premium rate, instructed the jury that:

"This so-called expert testimony is not to be discarded or disregarded by you. You should give it fair and honest consideration, as you do other testimony in the case. It is not all the evidence in the case. It is not all the evidence which you are to consider in determining the ultimate question of fact which is decisive of the rights of the parties in this action. *The fact that the situation and circumstances affecting this risk were so altered that thereby the insurance rates would be increased is not necessarily determinative of the final issue in this case.* It is for you to take into consideration all the circumstances and surroundings as they were on March 17, 1900, the testimony of the experts to which I have referred, and the results of their special knowledge which they have given to you, and from a careful, candid, honest consideration of it all, exercising your best judgments, determine the question at issue."

The defendant assigns as error the giving of that portion of the instruction which we have italicized. The instruction was correct. Evidence of the custom of insurance companies to charge a higher rate of premium under conditions similar to those shown in this case is competent upon the question of increase of risk, but it is not conclusive upon the jury, even if it be undisputed. This conclusion follows from what we have already said and the authorities cited.

Order affirmed.