MUNGER OIL & COTTON CO. v. CITY OF GROESBECK. (No. 7794.)

(Court of Civil Appeals of Texas. Dallas. April 28, 1917.)

1. MUNICIPAL CORPORATIONS ☞63(2) — POLICE POWERS — FIRE ORDINANCE—REASONABLENESS.

The question as to the reasonableness or unreasonableness of a municipal ordinance is open to inquiry, unless expressly authorized by the Legislature.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1384.]

2. MUNICIPAL CORPORATIONS ☞122(2), 641—ORDINANCE—REASONABLENESS—BURDEN OF PROOF.

When an ordinance is attacked as unreasonable and void, the party alleging its invalidity must aver and prove facts which made it so, and if the facts be controverted, they must be determined by the jury; but whether the facts relied upon show the ordinance to be unreasonable or not is a question for the court.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 284–286, 1411.]

3. MUNICIPAL CORPORATIONS ☞122(4) — POLICE POWERS—FIRE ORDINANCES.

Evidence *held* insufficient to show that a fire ordinance prohibiting repairs or erection of buildings of inflammable material within certain areas of a city was unreasonable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 288, 289.]

Error from District Court, Limestone County; A. M. Blackmon, Judge.

Suit by the Munger Oil & Cotton Company against the City of Groesbeck. Decree for defendant, and complainant brings error. Affirmed.

C. S. Bradley, of Groesbeck, for plaintiff in error.

TALBOT, J. This suit was instituted by Munger Oil & Cotton Company, a private corporation, hereinafter designated the "oil company," against the city of Groesbeck, a municipal corporation, incorporated and operating under the general laws of the state as a city of more than 1,000 inhabitants, herein called the "city," for the purpose of restraining the city and its officers from enforcing an order of the city to abate a certain wooden building situated on lots 9 and 10 in block 33 in the city of Groesbeck owned by the oil company and used by it as a cotton seed house. The court granted a temporary injunction restraining the city from abating or interfering with said building, and upon trial perpetuated the injunction and there is no complaint made of this portion of the decree, and from it no appeal is prosecuted.

Pending the suit in the trial court, the city passed an ordinance placing the block in question and other blocks of the city in the limits of the fire ordinance then already in force in the city, and which ordinance amended the said fire ordinance accordingly. After the adoption of such amended fire ordinance the oil company amended its suit and attacked the amended ordinance and its validity, in so far as it affects the block in question, alleging grounds and reasons for its invalidity, as hereinafter appears. Upon a trial before the court without a jury judgment was rendered, in effect, that the order for the abatement of the building was invalid and restraining its enforcement, but upholding the amended fire ordinance and refusing the relief asked by the oil company as against that ordinance, and it is to revise the judgment upholding the fire ordinance that this writ of error is sued out. The city has filed no brief in this court, and the foregoing statement of the nature and result of the suit is taken from the oil company's brief, which appears to be correct.

The amended fire ordinance, of which complaint is made, is substantially as follows:

"It shall not be lawful for any person to build, erect, move to, place, enlarge or repair any wooden building, house or structure whatsoever constructed of wood or other combustible material, or with wooden roof in the said city of Groesbeck, Texas, within the following described limits, to wit: Blocks 102, 103, 104, 56, 57, 58, 8, 9, 10, 33, 34, 35, said blocks being described in the map of said city of Groesbeck, Texas, drawn by Theo. Kosse, and said map being now of record in the Deed Records of Limestone county, Texas, to which said map and its said record reference is here made for a more complete and accurate description of said fire limits of the said city of Groesbeck, Texas.

"Any person attempting to erect, build, place, move to, enlarge or repair any such house, building or other structure shall be immediately commanded by the chief of police or any other person authorized by the said city commission of said city of Groesbeck to desist therefrom, and in case he or she fails or refuses to desist, such person or persons shall be fined not less than $25.00 nor more than $100.00, for each and every day he or she fails or refuses to comply and conform to the conditions of this ordinance, each and every day of such refusal or failure shall be and the same is hereby a separate and distinct offense and the city commission of said

city, or any of its authorized agents, shall remove such building or structure at the expense of the person so offending, which expense shall be charged against the owner or occupant of such building or structure, and said sum so expended by the said city of Groesbeck shall be collected by suit in the name of the city of Groesbeck in any court of competent jurisdiction."

The oil company charges that this ordinance is unauthorized and void as to block 33 in which its lots are situated, because: (1) It attempts to absolutely prohibit the repair of any structure within the fire limits prescribed made of combustible material, regardless of the character, nature, or extent of the repairs. (2) Because said block is situated on the east side of the Houston & Texas Cental Railroad and separated from all of the business part of the city by the reservation, or right of way of said railroad, which is 300 feet wide, upon which no objects of a combustible nature are situated on the west of said block, and is bounded north by State street, which is 100 feet in width, with no buildings adjoining same and across said street except some lumber sheds, on the east by a street 80 feet wide, with only two residences and no other obstructions facing said street on the opposite side, each of which residences is situated 20 or 30 feet back from the street, on the south by another street 80 feet wide, without any buildings on either side of said street within a distance thereof of more than 100 feet; that said block 33 is 150 feet east and west and 250 feet north and south, and is occupied by the building of this plaintiff, which is about 20x30 feet, and is situated near the northwest corner thereof and more than 125 feet from any other building, and is the only building situated on the entire block, and the only building which has been situated thereon (with the exception of a church, which has been removed six or eight years) since long before the city of Groesbeck was incorporated in the year 1890; and that more than one-half of said block is now and for years has been dedicated to and used for agricultural purposes, and is only suitable and fit for residences and cotton seed houses for shipping purposes, to which plaintiff's building is dedicated and used. Excluding six blocks which are situated entirely west of the railway and more than 400 feet from any part of block 33, there are no other buildings situated in the city of Groesbeck constructed of noncombustible material, with the exception of the county courthouse and jail, the public school building, which are many blocks away, and the ice plant, which is two blocks away, and that all of the buildings on all of the blocks adjacent to block 33 are wooden buildings, and that all of the adjacent blocks except one are used entirely for residence purposes, with the residences only sparsely situated thereon, except the block immediately north of block 33, which is entirely used for lumber sheds and one or two small iron-clad buildings in connection therewith; that any kind of wooden structure situated on block 33 would not in any way be a dangerous exposure to any part of the business part of the city of Groesbeck, and would be no more of an exposure to any of the adjacent property than exists in the case of any block in the city upon which residences or other buildings are now situated; that the ordinance in question was adopted (if at all) as an amendment to a previous ordinance, which confined the fire limits to the six blocks mentioned above, and was adopted for the purpose of preventing this plaintiff from erecting a cotton seed house on his said land and premises, and was not enacted in good faith by the city of Groesbeck in an effort to protect said city against injury by fire, and that no more reason exists for embracing said block in the said fire limits of the said city than exists for embracing any other block in the fire limits, upon which any building is constructed. (3) Because said ordinance is an arbitrary, unjust and oppressive attempt of the city to exercise its power, and if enforced will be oppressive to plaintiff, and will amount to a practical confiscation of its property, and by reason of all the facts set out hereinabove said ordinance is absolutely void and beyond the power of the city of Groesbeck to enact in so far as said block 33 is concerned.

The oil company further alleges:

"That it owns the two lots in question with the house now situated thereon, and that if it is compelled to abate its building and the said fire ordinance set out and mentioned above is held to be valid, that its said lots of ground will be practically of no value, and same will be practically confiscated, and the public will not be correspondingly benefited or benefited in any appreciable degree, and this it is ready to verify. That there are no business houses of any kind on any block adjacent to said block 33, except a small lumber office, and there is no effort being made by any one to erect any such business house upon any such blocks adjacent thereto, and no prospect that same will be erected on any such adjacent block for many years to come. That the action of the city in passing such ordinance is unjust to plaintiff, is arbitrary, and if permitted to be enforced will practically destroy the value of plaintiff's said property."

By appropriate assignments of error the oil company asserts that the trial court erred to its prejudice in not declaring void and canceling the ordinance in question, and contends for the following propositions:

"A city incorporated under the general laws of the state as a city of more than one thousand inhabitants may pass fire ordinances prohibiting the erection of wooden buildings in prescribed limits for the purpose of preventing fires; but an effort on its part to prohibit the erection of such buildings in any portion of the city where there is no apparent necessity for same in the prevention of fire is a nullity, and the court has the right to inquire into the necessity and propriety of such ordinance, as affecting given territory, and to declare such ordinance void as to such territory when it determines that there is no necessity for the ordinance to prevent the spread of fire within such territory"; "that an arbitrary exercise of the police power of a city, in fixing the fire limits of such city, actuated

by other motives than an honest desire to prevent the spread of fire, will be enjoined by the court as an unlawful interference with the property rights of a citizen."

[1] If it conclusively appeared that there was no necessity for the passage of the ordinance in question, and that the governing authority of the city of Groesbeck adopted it, not in the exercise of a reasonable discretion, but as a mere excuse for an unwarranted and arbitrary interference with the constitutional right of the oil company to carry on a lawful business or to use and enjoy its property, we would sustain the assignments and propositions. In City of Austin v. Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114, it was held that while it was within the power of the Legislature to make arbitrary laws, provided they neither infringe the Constitution of the state nor that of the United States, yet unless a city's charter contains an express power to enact an arbitrary and unreasonable ordinance it should be held that it was not the intention of the Legislature to confer authority to enact such ordinance. It is also the well-established doctrine that when the court has only a municipal ordinance to deal with the question as to the reasonableness or unreasonableness of such an ordinance is open to inquiry in the courts, the recognized and declared exception being that the reasonableness vel non of an ordinance cannot be thus questioned if it be expressly authorized by the Legislature and be a regulation which the Legislature itself has power to adopt and enforce. H. & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850, and cases therein cited.

[2] It is a further established rule that when an ordinance is attacked upon the ground that it is unreasonable, and therefore void, it is incumbent upon the party alleging its invalidity to aver and prove facts which made it so, and that if the facts be controverted, they must be determined by the jury; but whether the facts relied upon show the ordinance to be unreasonable or not is a question for the court. Now the familiar rule that it is within "the power of the Legislature to regulate the use of property and the carrying on of business so as to protect the health, safety and comfort of citizens, * * * and its use is not to be defeated by the mere fact that loss or expense may be imposed upon the owners of the property or business," is recognized by counsel for the oil company. But it is contended that this power is not an arbitrary one; that it is commensurate with, but does not exceed, the duty to provide for the real needs of the people in the respects just mentioned, as consistently as may be with private property rights; that it clearly appears that the ordinance involved in this suit is unnecessary and unreasonable, and should have been so declared by the trial court. We regard the contention that the power to regulate the use of property does not exceed the duty to provide for the real needs and safety of the inhabitants of a city as sound, but we are not prepared to subscribe to the proposition that it clearly or manifestly appears from the record before us that the ordinance attacked is unnecessary, arbitrary, and unreasonable.

[3] Clearly, the ordinance does not appear on its face to be unreasonable, and in our opinion the facts in evidence do not conclusively show, or establish as a matter of law, that it was an arbitrary enactment and wholly unnecessary to prevent the spread of fire in the city of Groesbeck. The following remarks of the Supreme Court of Minnesota in the case of Evison v. Railway Co., 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 436, are quoted with approval in the case of H. & T. C. Ry. Co. v. City of Dallas, supra, and appropriate here:

"Much must be left to the judgment and discretion of the city council, and when they have exercised their judgment and discretion in passing an ordinance it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness, and the want of necessity for it as a measure for the protection of life and property, must be clear, manifest, and undoubted, so as to amount, not to a fair exercise, but an abuse of discretion, or a mere arbitrary exercise of the power of the council."

The statement of facts contains a map of the city of Groesbeck. This map shows the location of the fire limits of the city, and all of the buildings in such limits which are built of brick or other material (except wood) are shown by tinted lines. The width of the streets and distances of the buildings from each other are fairly shown. The Houston & Texas Central Railroad runs practically north and south on the east side of the business houses of the city. By the amended ordinance, which is assailed as being unnecessary and unreasonable, three blocks were added to the fire limits on the west side of the railroad, and three blocks, including block 33, in which the oil company's property is situated, were added on the east side of said railroad. The railroad reservation or right of way is 300 or 350 feet in width and separates block 33, the block in which the oil company's property is situated, from the main business part of the city on the west. It is separated, however, from lumber sheds and an office owned by Walker & Son on the north by a street only 100 feet wide. Block 33 is 250 feet north and south and 150 feet east and west, and has no building or structure of any character on it except the oil company's seed house, which is a one-story shingle-roof wooden building about 25 feet wide and 40 feet long. Immediately east of block 33 is a street 90 feet wide, running north and south, with two frame residences, setting back therefrom about 25 feet, fronting on said street. Immediately north of said block 33 is a street 100 feet wide running east and west. This street separates blocks 33 and 34, and upon

block 34, which is directly north of block 33, is situated the lumber sheds and office of Walker & Son. Immediately east of block 34 and the said street running north and south, 90 feet wide, and northeast of block 33, are three frame residences. South of block 33 is a street running east and west 80 feet wide. This street immediately south of block 33 is not fronted by any building, but south of and adjoining a vacant lot which abuts on said street are the residences of W. H. Jones and John Smith. There are also two residences in the block east of and across the 90-foot street running north and south mentioned above. One of these residences is situated in the northwest corner of said block, and the other in the southwest corner. West of block 33 about 350 feet away is Browder's Hotel, a two-story wooden building, a barn and lot to its west, and a small "shack" in its southwest corner. The seed house is near the northwest corner of the block. There is a one three-story building (three blocks from the one in question), eight two-story buildings, and all other building in town are one-story buildings. The city has an estimated population of 1,600 people. All the residences in town are built of wood, and most of them are covered with wooden shingles. The oil company contemplates building a large iron-clad seed and storage house to take the place of the one in question, but it would not build a brick or other fireproof house, because they say the cost of the same would be prohibitive. There is practically no oral testimony, aside from that showing the location of the buildings and their distances from each other, etc., in regard to the hazard of fire, should it originate in the oil company's building. The testimony of the witness, J. W. Thompson. without contradiction, tends to show that should it originate in the courthouse, which was not the original fire limit, but added by the amended ordinance, the spread would be great and the consequences very disastrous. Surely this court, under the evidence, would not be justified in setting aside the action of the trial court in holding that the city commissioners had not abused their discretion in enacting the ordinance in question, and declaring as a matter of law that said ordinance was unreasonable. The presumption is that the ordinance is valid, and repeating what we have already said, when an ordinance like the one we are considering "is attacked upon the ground that it is unreasonable and therefore void, it is incumbent upon the party who alleges its invalidity to aver and prove the fact which made it so." The oil company has not, according to the record sent to this court, discharged this burden in such manner as to authorize us to reverse the judgment of the district court. It is therefore the order of the court that said judgment be affirmed.

Affirmed.